```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/14/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
P-C PALLADIO, LLC,                                                      :
                                                                        :
             Plaintiff-Judgment Creditor,                               :    13 Mc. 234 (JMF)
                                                                        :
             -v-                                                        :    OPINION AND ORDER
                                                                        :
CRAIG NASSI,                                                            :
                                                                        :
             Defendant-Judgment Debtor.                                 :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      PC-Palladio LLC ("Judgment Creditor") seeks to satisfy a judgment it obtained against Craig Nassi ("Judgment Debtor"), who appears in this action *pro se*. (Docket No. 48).[1] Specifically, Judgment Creditor seeks a turnover of cash and other assets allegedly in Judgment Debtor's possession, an accounting of Judgment Debtor's assets, a charging order against Judgment Debtor's interests in four limited liability companies ("LLCs"), and a turnover of proceeds from those four entities. For the reasons explained below, Judgment Creditor's application for summary relief is GRANTED in part and DENIED in part. The Court will hold a trial with respect to the issues remaining open.

## BACKGROUND

      On May 1, 2013, the United States District Court for the Northern District of Illinois entered judgment against Judgment Debtor, in favor of Judgment Creditor, in the amount of $20,161,454.25 (the "Judgment"). (Decl. of Matthew Kane Supp. Mot. To Enforce Judgments

---

[1] The Court notes that in its motion papers, Judgment Creditor refers to itself as "PC-Palladio," while the party's name is spelled "P-C Palladio" on the Docket. For purposes of this Opinion, the Court adopts the "PC-Palladio" spelling.

Against Non-Parties ("Kane Alter Ego Decl.") (Docket No. 60), Ex. A). On July 3, 2013, Judgment Creditor registered the Judgment, which remains unpaid, in the United States District Court for the Southern District of New York. (*Id.*, Ex. B). Fifteen days later, Judgment Creditor served a restraining notice on Judgment Debtor, which — with certain narrowly defined exceptions not at issue here — forbade Judgment Debtor from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which he . . . has an interest" until the Judgment was satisfied. (*Id.*, Ex. C; N.Y. C.P.L.R. 5222(b)).

Judgment Debtor is — or at least was — in the business of real estate development. He is affiliated with LLCs known as BCN Management LLC ("BCN") and Caffettino LLC ("Caffettino"). The former, which Judgment Debtor describes as being "in the process of winding down" (Objection to Judge Furman's Oct 31 2013 Order ("Alter Ego Opp'n") (Docket No. 78)), was initially formed to "run [Judgment Debtor's] real estate development business." (*Id.*). Caffettino was formed on September 19, 2013, and allegedly plans to develop a coffee shop in Manhattan. (Kane Alter Ego Decl., Ex. F ("Craig Nassi Oct. 11 Dep."), at 82:17-83:8).

Judgment Debtor's father, Bijan Nassi, is the managing member of four other LLCs that own or owned real estate in New York City: 242 Fifth Realty LLC ("242 Fifth"), West 176 Street Realty LLC ("West 176"), 315 Park Avenue South LLC ("315 PAS"), and 224 Centre Realty, LLC ("224 Centre") (together, the "Bijan Nassi Entities"). (Bijan Nassi's Mem. of Law. Opp'n P-C Palladio LLC's Mot. For an Order Requiring Turnover ("Bijan Nassi Opp'n") (Docket No. 100) 1, 6-10; Declaration of Bijan Nassi ("Bijan Nassi Decl.") (Docket No. 99) ¶¶ 10, 14, 18, 27). It is undisputed that, at one time, Judgment Debtor held interests in all four of these entities (Bijan Nassi Opp'n 6-10), but whether he still does, and the size of any such interests, are hotly disputed. Bijan Nassi contends that Judgment Debtor no longer possesses an

2

interest in 242 Centre (*see* Bijan Nassi Opp'n 11), and there is considerable disagreement as to the size of Judgment Debtor's interest in the other three entities (*compare id.* 6-10 *with* Reply Mem. of Law Supp. Plaintiff/Judgment Creditor's Mot. for Order Requiring Turnover ("Bijan Nassi Turnover Reply Mem.") (Docket No. 107) 3-9).  Three of the four LLCs have sold their main assets in recent years; 242 Fifth sold its property in December of 2012 (Bijan Nassi Decl. ¶ 12), West 176 sold its property in October of 2011 (*id.* ¶ 15), and 315 PAS sold its property in May of 2013 (*id.* ¶ 24).  Bijan Nassi has retained the proceeds from the sales of 242 Fifth and West 176.  (*Id.* ¶¶ 12, 16).

In an effort to satisfy the Judgment, Judgment Creditor filed three motions.  First, Judgment Creditor proposed — and the Court issued — an order against Judgment Debtor to show cause why judgment should not be entered against BCN and Caffettino, and why BCN and Caffettino should not be directed to turn over all assets until the Judgment is satisfied (the "alter ego motion").[2]  (Docket No. 58; Mem. of Law. Supp. Judgment Creditor's Mot. for Order Enforcing Judgment Against Non-Parties ("Alter Ego Mem.") (Docket No. 59)).  Second, Judgment Creditor filed a motion seeking a turnover of assets listed in financial statements provided by Judgment Debtor to a third party; a turnover of paintings allegedly purchased by Judgment Debtor; and an accounting of assets that have been allegedly disposed of since June 30, 2013 (the "Craig Nassi turnover motion").  (Docket No. 80; Mem. Law Supp. Judgment Creditor's Mot. for Turnover Order ("Turnover Mem.") (Docket No. 81).  Third, Judgment Creditor filed a motion related to Judgment Debtor's interests in the Bijan Nassi Entities (the

---

[2]   On October 25, 2013, because of certain allegedly suspect transfers involving BCN and Caffettino accounts at Amalgamated Bank ("Amalgamated") the Court ordered Amalgamated to restrain the accounts in the names of BCN and Caffettino, as well as any other accounts on which Judgment Debtor was an authorized signatory.  (Docket No. 46).  On November 26, 2013, the Court ordered that these restraints would remain in place pending resolution of the alter ego motion.  (Docket No. 86).

"Bijan Nassi turnover motion"). (Docket No. 66). This third motion seeks an order directing Bijan Nassi individually, and as the managing member of the Bijan Nassi Entities, to turn over funds held on behalf of Judgment Debtor and debt owed to Judgment Debtor, and an order charging the membership interests of the Judgment Debtor with payment of the Judgment. (Docket No. 66). The Court will address the three motions in turn.

## DISCUSSION

### A. Legal Standard

"In a special turnover proceeding based on New York law, made applicable pursuant to Rule 69 [of the Federal Rules of Civil Procedure,] a court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2004 WL 616125, at *6 (S.D.N.Y. Mar. 30, 2004) (internal quotation marks omitted), *aff'd in part, vacated in part*, 143 F. App'x 761 (2d Cir. 2005) (summary order); *see also In re Port of N.Y. Auth.*, 18 N.Y.2d 250, 255 (1966) (holding that the summary judgment standard applies to CPLR special proceedings). Accordingly, "[s]ummary relief may not be granted unless the submissions of the parties taken together show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cordius Trust*, 2004 WL 616125, at *6 (internal quotation marks omitted). As with a motion for summary judgment, "[t]he moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). Where, as here, a party is proceeding *pro se*, the Court must treat that party's submissions with "special solicitude." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

**B. Alter Ego Motion**

The Court turns first to the alter ego motion, which seeks an order allowing Judgment Creditor to enforce the Judgment against BCN and Caffettino. A party seeking to pierce the corporate veil must show that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Motorola Credit Corp. v. Uzan*, 739 F. Supp. 2d 636, 640 (S.D.N.Y. 2010) (internal quotation marks omitted). To determine whether the owners have exercised the requisite degree of domination, courts consider a variety of factors, including "failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use." *Superior Transcribing Serv., LLC v. Paul*, 898 N.Y.S.2d 234, 236 (2d Dep't 2010) (internal quotation marks omitted).

In this case, Judgment Creditor makes a forceful argument for "reverse veil piercing" of both BCN and Caffettino. That is, there is ample support in the record for a reasonable fact finder to conclude that Judgment Debtor exercises complete domination over the two entities and that such domination has been used to commit a fraud or wrong against Judgment Creditor — namely, by preventing Judgment Creditor from enforcing its judgment. Nevertheless, there are material factual disputes with respect to Judgment Debtor's domination of both entities. With respect to BCN, such disputes include, but are not limited to, the following:

(1) Whether Judgment Debtor's personal expenses on the American Express BCN statement were treated (let alone properly treated) as deferred compensation in lieu of salary (*see* Craig Nassi Oct. 11 Dep., at 124:15-19);

(2) whether members of BCN other than Judgment Debtor (including Eli Tenenbaum, Chuck Swain, Eric Feldman, Yiani Bellis, Jim Bush, Michelle Tall, Felicia Majcherek, and Gilbert Manzanaras) exist, and, if so, their percentage interest or interests in the entity (*see* Kane Alter Ego Decl., Ex. Q ("Craig Nassi Oct. 29 Dep."), at 313:25-314:5; Docket No. 71, Ex. D ("BCN Operating Agreement"));

  (3)  whether the operating agreement for BCN produced by Judgment Debtor on November 18, 2013, is genuine (*see* BCN Operating Agreement; Nov. 19, 2013 Letter (Docket No. 72), at 3-4); and

  (4)  whether BCN ever kept meeting minutes (*see* Nassi Oct. 11 Dep., at 74:2-5).

With respect to Caffettino, the material disputes of fact include, but are not limited to:

  (1)  Whether Eli Tenenbaum is, in fact, the principal owner of Caffettino, and whether either of the "affidavits" purporting to demonstrate that fact are genuine (*see* Alter Ego Opp'n, Ex. C; Supp. Decl. of Matthew Kane Supp. Judgment Creditor's Motion for Turnover (Docket No. 92), Ex. D);

  (2)  whether there is a Caffettino LLC operating agreement, and, if so, whether either operating agreement that Judgment Debtor submitted to Judgment Creditor and the court, respectively, is genuine (*see* November 22 Letter, Ex. C (Docket No. 83); Alter Ego Opp'n, Ex. B; *compare* November 22 Letter, Ex. C *with* Docket No. 87, at 8)); and

  (3)  whether Caffettino has been funded by any investors other than Judgment Debtor or BCN (*see* Alter Ego Opp'n 5; Resp. to Dec. 5 Supp. Br. and Reply to Motion for Turn Over Order ("Craig Nassi Supp. Brief & Turnover Opp'n") (Docket No. 98) 1-2; Nassi Oct. 11 Dep., at 84:25-85:21).

Given the Court's familiarity with this case (and its assessment of Judgment Debtor's credibility in testimony before the Court on October 10, 2012 (Docket No. 111)), it is skeptical of Judgment Debtor's account of these entities and his relationships with them. Moreover, Judgment Creditor has presented substantial reasons to believe that some of the evidence submitted by Judgment Debtor may be false or fraudulent. (Supp. Mem. of Law Supp. Judgment Creditor's Mot. for Turnover Order ("Palladio Supp. Mem.") (Docket No. 91) 4 n.7). But given the standard at this stage of the proceedings, not to mention the special solicitude owed to Judgment Debtor as a *pro se* litigant, the Court is not prepared to summarily rule in Judgment Creditor's favor on its alter ego motion. Accordingly, this Court "must conduct a trial" as to whether BCN and Caffettino are Judgment Debtor's mere alter egos. *Cordius Trust*, 2004 WL 616125, at *6. The restraints on BCN's and Caffettino's accounts at Amalgamated shall remain in place pending the trial.

**C. Craig Nassi Turnover Motion**

Next, the Court turns to the Craig Nassi turnover motion. Specifically, the Court addresses Judgment Creditor's requests for (1) turnover of paintings allegedly purchased by Judgment Debtor; (2) turnover of assets listed in Judgment Debtor's financial statements; and (3) an accounting of Judgment Debtor's assets. The turnover requests are governed by N.Y. C.P.L.R. Rule 5225(a), which provides that, "where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff." N.Y. C.P.L.R. 5225(a).

**1. Turnover of Paintings**

First, Judgment Creditor requests an order directing Judgment Debtor to turn over two paintings (the "Paintings") purchased in late August of 2013 from the Casterline Goodman Gallery ("C&G"). Judgment Debtor's personal American Express statements reveal a $20,000 charge to C&G on September 9, 2013 (Kane Alter Ego Decl., Ex. I), and Judgment Creditor served an information subpoena on C&G regarding this charge. (Decl. of Matthew Kane Supp. Judgment Creditor's Mot. for Turnover Order ("Kane Craig Nassi Turnover Decl.") (Docket No. 82), Ex. F). On November 7, 2013, C&G provided a series of documents to Judgment Creditor related to purchases by the "Nassi Family Trust" of a $35,000 De Kooning and a $110,000 Basquiat. (*Id.*). According to C&G, Judgment Debtor instructed C&G by telephone to deliver the artwork on October 12, 2013, to a woman named "Tina" at the corner of 72nd Street and Central Park West in New York City. (*Id.* at 2). C&G also produced screenshots of text

7

messages, in which Judgment Debtor and the person delivering the paintings appear to discuss the rendezvous. (*Id.* at 13-16). Among other things, immediately after the delivery person indicated that he or she was at the meeting point, "Craig" (presumably Judgment Debtor) replied "Tina coming." (*Id.* at 15-16). In response to the delivery person's last text — telling "Craig" to "[e]njoy them" — "Craig" responded: "U r the best. More!!!" (*Id.* at 16).[3]

This information certainly raises suspicions about Judgment Debtor's conduct, but the Court is compelled to deny Judgment Creditor's request for a turnover order because it has failed to show that the Paintings are in Judgment Debtor's possession or control. Specifically, Judgment Creditor has provided no evidence as to what happened to the Paintings after the delivery on October 12, 2013. Judgment Debtor testified that he does not know where the Paintings are (Craig Nassi Oct. 11 Dep., at 251:19-23, 253:24-254:2), and, whatever the credibility of this testimony may be, the Court cannot summarily order the turnover of assets whose location is unknown. *Cf., e.g.*, *Gryphon Domestic VI, LLC v. APP Int'l Fin. Co.*, 836 N.Y.S.2d 4, 28-29, 36 (1st Dep't 2007) (ordering turnover of property located in Indonesia); *Starbare II Partners, L.P. v. Sloan*, 629 N.Y.S.2d 23, 23 (1st Dep't 1995) (ordering turnover of artwork purportedly located in New Jersey). Even if Judgment Creditor's request had been brought pursuant to C.P.L.R. Rule 5225(b), which permits turnover orders from people other than the judgment debtor, the request would fail because such a proceeding must be brought

---

[3] In light of the information provided by C&G, there is considerable reason to believe that Judgment Debtor may have committed perjury in his depositions. Specifically, when asked only one day before the alleged delivery took place whether he had given "any instructions to C&G Fine Art with regard to what should happen to the painting," Judgment Debtor responded: "Not specifics, no." (Craig Nassi Oct. 11 Dep., at 253:5-10.). And when asked only about two weeks later, "Do you know who picked [the paintings] up?" Judgment Debtor replied: "I have no idea." (Craig Nassi Oct. 29 Dep., at 455:14-15).

8

against the person in possession of the property.  *See* N.Y. C.P.L.R.5225(b).  Accordingly, whether the Paintings are in Judgment Debtor's possession or custody must be resolved at trial.

### 2. Turnover of Assets Listed in Judgment Debtor's Financial Statements

Next, Judgment Creditor requests a turnover of assets listed by Judgment Debtor in a financial statement provided to Sol Goldman Investments LLC ("Sol Goldman LLC").  In response to an information subpoena, Sol Goldman LLC provided a financial statement prepared by Judgment Debtor's accountants, J.A. Bush & Associates ("J.A. Bush"), summarizing Judgment Debtor's assets and liabilities as of June 30, 2013, (the "June Statement") to support an application to serve as the guarantor for a lease between 414 East 58th Street LLC and Caffettino (Kane Craig Nassi Turnover Decl., Ex. G ("June Statement"); Craig Nassi Supp. Brief & Turnover Opp'n 3-4).  According to the June Statement, Judgment Debtor had assets totaling $3,981,000 as of June 30, 2013, including: (a) $386,000 in cash; (b) stocks and bonds worth $245,000, and; (c) a collection of art and jewelry worth $2,700,000.  (June Statement).  Pursuant to a Court Order entered November 27, 2013, J.A. Bush provided Judgment Creditor with an updated financial statement on December 11, 2013, summarizing Judgment Debtor's assets and liabilities as of November 18, 2013 (the "November Statement").  (Reply Decl. of Matthew Kane Further Supp. Judgment Creditor's Mot. for Turnover ("Kane Craig Nassi Turnover Reply Decl.") (Docket No. 104), Ex. C ("November Statement")).  Notably, the November Statement lists only $18,000 in cash, and values the art and jewelry at $1,354,800.  (*Id.*).  In its motion, Judgment Creditor requests a turnover of the assets listed in the November Statement.  (Reply Mem. of Law. Further Supp. Plaintiff-Judgment Creditor's Mot. Turnover Order ("Craig Nassi Turnover Reply Mem.") (Docket No. 103) 1-2).

There is no genuine dispute that Judgment Debtor has an interest in, and is in possession of, the cash and property listed in the November Statement. It clearly states that the cash is "on hand" in the name of "Craig Nassi." (November Statement 5). Likewise, the November Statement provides an accounting of Judgment Debtor's art collection, and indicates that Judgment Debtor is either the 80% or 100% owner of each piece of artwork. (November Statement 7). Further, Judgment Debor admits that he is the owner of the art collection in his opposition memorandum (Craig Nassi Supp. Brief & Turnover Opp'n 4), and he testified in open court that the art is currently in storage in Denver, Colorado (Docket No. 94, at 20:3-24). Whether Judgment Debtor is the 100% owner of each item in the art collection is irrelevant, as Rule 5225(a) requires turnover of any assets in which a judgment debtor has "*an* interest." N.Y. C.P.L.R. 5225(a) (emphasis added); *see also Signature Bank v. HSBC Bank USA, N.A*, 889 N.Y.S.2d 242, 244 (2d Dep't 2009) ("Even jointly owned assets are vulnerable to levy by a judgment creditor pursuant to CPLR 5225."). Any co-owner of the artwork "ha[s] no power to prevent the execution and levy on the artwork"; instead, his or her remedy would be to bring a proceeding under CPLR Section 5239 after the property has been seized for sale. *Sloan v. Starbare II Partners, L.P.*, 681 N.Y.S.2d 267, 269 (1st Dep't 1998); *see* N.Y. C.P.L.R. 5239. Accordingly, Judgment Debtor is directed to immediately turn (1) the cash over to Judgment Creditor and (2) the art and jewelry over to the appropriate authorities.

**3. Accounting for Assets Listed in the Financial Statements**

Finally, Judgment Creditor seeks an accounting of Judgment Debtor's assets. The Court already ordered Judgment Debtor to provide an accounting of the assets listed in the June Statement. (Docket No. 89). According to Judgment Creditor, however, Judgment Debtor merely provided the November Statement, which has information regarding the art collection but

does not provide information regarding any of the other assets.  (Craig Nassi Turnover Reply Mem. 6-7).  Accordingly, Judgment Debtor is directed to provide Judgment Creditor with a full accounting of all the assets listed in the June Statement, including the precise details of where every asset is or was located.  *See, e.g.*, *Gibbons v. Smith*, No. 01 Civ. 1224 (LAP), 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010) (noting that Federal Rule of Civil Procedure 69(a) permits "wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings").

Judgment Debtor is further ordered to provide an accounting for the diminution of assets between the June Statement and the November Statement.  Specifically, Judgment Debtor must account for the fact that the November Statement listed $368,000 less in cash; omitted the $245,000 in marketable stocks and bonds altogether; and reduced the value of the art and jewelry collection by $1,345,000.  Significantly, for all but three weeks of the period between the two statements, Judgment Debtor was under a restraining notice, yet the value of his assets decreased by nearly $2 million.  Consequently, Judgment Debtor must provide details regarding any dispositions of these assets, including the proceeds, terms, and counterparties to any such transactions.  *See, e.g., Costomar Shipping Co. v. Kim-Sail, Ltd.*, No. 95 Civ. 3349 (KTD) (JCF), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995) ("Pursuant to [Federal Rule of Civil Procedure] Rule 69(a), the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." (internal quotation marks omitted)).

**D.  Bijan Nassi Turnover Motion**

The last motion before the Court concerns Judgment Debtor's interests in the Bijan Nassi Entities.  As noted, Judgment Creditor requests a charging order with respect to Judgment

11

Debtor's interests in those entities, as well as a turnover of proceeds derived from the entities. The request for a charging order is brought pursuant to New York Ltd. Liab. Co. Law Section 607, and the request for a turnover order is brought pursuant to C.P.L.R. Rules 5225(b) and 5227.  The Court first addresses Judgment Debtor's ownership interests in the Bijan Nassi Entities and the request for the charging order, and then turns to the request for a turnover order.

### 1. Judgment Debtor's Ownership Interests in the Entities and Charging Order

There is no genuine dispute that Judgment Debtor has at least *some* interest in each of the four Bijan Nassi Entities.  As for 242 Fifth, there is no dispute that Judgment Debtor has at least a 6.75% interest in the entity.  Bijan Nassi makes no contention that Judgment Debtor has transferred or otherwise disposed of his interest in the entity; in fact, he points to K-1 tax returns indicating that Judgment Creditor had a 6.75% profit interest in the entity, and a 9% capital interest in the entity.  (Bijan Nassi Decl., Ex. 2).  As for 242 Centre, it is likewise beyond dispute that Judgment Creditor possesses at least a 9% interest in the entity.  Although Bijan Nassi contends in his affidavit that "in mid-May 2013, pursuant to [an] oral agreement, Craig's membership interest in 224 Centre Realty LLC was terminated" (Bijan Nassi Decl. ¶ 30), the Court disregards this statement under the so-called sham-issue-of-fact doctrine, as Bijan Nassi stated in an information subpoena dated September  25, 2013 that Judgment Debtor's interest in 224 Centre was 9% (Decl. of Matthew Kane Supp. Plaintiff-Judgment Creditor's Mot. to Require Turnover of Judgment Debtor's Assets in Possession of Third Parties ("Kane Bijan Nassi Turnover Decl.") (Docket No. 68), Ex. L ¶ 2), and he confirmed this response in a subsequent deposition (Reply Decl. of Matthew Kane Further Supp. Plaintiff/Judgment Creditor's Mot. for Order Requiring Turnover of Assets ("Kane Bijan Nassi Turnover Reply Decl.") (Docket No. 108), Ex. 2, at 118:3-119:19).  *See In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir.

2013) (explaining that the "sham issue of fact doctrine[] . . . prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony"). Similarly, there is no genuine dispute that Judgment Debtor possesses a 12% interest in West 176, as this interest is reflected in the operating agreement (Kane Bijan Nassi Turnover Reply Decl., Ex. 6, at 4), and Bijan Nassi makes no allegation that Judgment Debtor ever disposed of this interest (*see* Bijan Nassi Opp'n 7-8). Finally, there is no material dispute that Judgment Debtor retains at least a 1.27% interest in 315 PAS, as Bijan Nassi readily admits as much. (*See* Bijan Nassi Opp'n 8, 19).

Accordingly, Judgment Creditor is entitled to an order charging Judgment Debtor's interests in all four Bijan Nassi Entities with payment of the Judgment. *See* N.Y. Ltd. Liab. Co. Law § 607.[4] The extent of the charging order, however, is in dispute with respect to three of the entities. (The sole exception is West 176, in which Judgment Debtor has a 12% interest.) Judgment Creditor contends that Judgment Debtor's interest in 242 Fifth is 9% (*see* Mem. Law Supp. Plaintiff-Judgment Creditor's Mot. for Order Requiring Turnover ("Bijan Nassi Turnover Mem.") (Docket No. 67) 5; Reply Mem. Further Supp. Plaintiff-Judgment Creditor's Mot. For Turnover ("Bijan Nassi Turnover Reply Mem.") (Docket No. 103) 3-4), but Bijan Nassi points to evidence suggesting that Judgment Debtor's interest is only 6.75% (*see* Bijan Nassi Decl. ¶ 10; Bijan Nassi Decl., Ex. 2). Similarly, Judgment Creditor argues that Judgment Debtor's interest in 242 Centre is 24% (Bijan Nassi Turnover Mem. 5-6; Bijan Nassi Turnover Reply Mem. 5-7), but Bijan Nassi has raised a material dispute as to whether Judgment Creditor's interest was reduced to 9% in 2001 (Bijan Nassi Decl., Ex. 12). Finally, Judgment Creditor contends that

---

[4]   As Bijan Nassi points out, and Judgment Creditor acknowledges, these charging orders are not against Bijan Nassi personally. (*See* Bijan Nassi Opp'n 20-21; Bijan Nassi Turnover Reply Mem. 15 n.28). Instead, they are against Judgment Debtor's interests in the Bijan Nassi Entities.

Judgment Debtor's interest in 315 PAS is actually 33.3% (Bijan Nassi Turnover Mem. 7; Bijan Nassi Turnover Reply Mem. 7-9), but Bijan Nassi raises a dispute regarding Judgment Debtor's interest in this entity (*see* Bijan Nassi Decl., Ex. 5; *id*., Ex. 6). Thus, the extent of the charging orders against 242 Fifth, 242 Centre, and 315 PAS must be determined at trial — although they can be no lower than 6.75%, 9%, and 1.27%, respectively.

### 2. Turnover of Proceeds Derived from the Bijan Nassi Entities

In addition, there is no material dispute that Judgment Creditor is entitled to the $480,521 that remained in Judgment Debtor's capital account with 224 Centre as of December 31, 2012. Bijan Nassi contends that Judgment Debtor "agreed to transfer the balance of this capital account in mid-May 2013 when he agreed to terminate his membership interest" (Bijan Nassi Decl. ¶ 31), but, again, the Court does not credit Bijan Nassi's assertion that Judgment Debtor agreed to terminate his interest in 224 Centre in mid-May 2013, as that assertion is directly contradicted by Bijan Nassi's previous sworn testimony that Judgment Debtor retained a 9% interest in the entity as of September 2013. As Bijan Nassi points to no other facts disputing that Judgment Debtor was entitled to the money that remained in his capital account, Bijan Nassi and 224 Centre are hereby ORDERED to turn over the $480,521 to Judgment Creditor.

Further, there is no material dispute that Judgment Creditor is entitled to some percentage of the proceeds from the sale of property held by 315 PAS. As noted above, there is no dispute that Judgment Debtor holds an interest of at least 1.27% (and perhaps as much as 33.3%) in this entity, and there is no dispute that 315 PAS sold its only asset — a building — in May of 2013, netting $2,334,555.66 to 315 PAS. (Bijan Nassi Decl., Ex. 11; Bijan Nassi Turnover Reply Mem. 9). Bijan Nassi claims that there will be "no money available for distribution to Craig at year-end 2013" owing to "outstanding expenses and liabilities relating to the sale" (Bijan Nassi

14

Opp'n 10), but the Court does not credit such vague and conclusory assertions, as Bijan Nassi has not specified the nature or even the amounts of the expenses and liabilities. *See, e.g.*, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("[A] plaintiff must provide more than conslusory allegations to resist a motion for summary judgment."); *Brutus v. Silverseal Corp.*, No. 06 Civ. 15298 (LAP), 2009 WL 4277077, at *9 (S.D.N.Y. Nov. 24, 2009) (failing to credit Plaintiff's "vague and conclusory allegation in his affidavit"). Judgment Debtor is therefore entitled to at least 1.27% of the proceeds of the 315 PAS sale, or $29,648.86. Accordingly, Bijan Nassi and 315 PAS are ordered to turn over $29,648.86 to Judgment Creditor. Judgment Creditor's entitlement to any additional proceeds from this sale, as well as any residual assets that may have been associated with the property prior to the sale (*see* Bijan Nassi Turnover Reply Mem. 9 n.9), will be determined at trial.

There are, however, genuine disputes of material fact as to whether Judgment Creditor is entitled to proceeds from the asset dispositions by 242 Fifth and West 176. Specifically, Bijan Nassi points to evidence suggesting that he set off the proceeds from these asset dispositions against debt that Judgment Debtor had previously incurred to Bijan Nassi. (Bijan Nassi Decl. ¶¶ 12, 16; Bijan Nassi Decl., Ex. 1 ¶¶ 33-56). If these assertions are true, then Judgment Debtor would no longer have an interest in these proceeds, and Judgment Creditor would not be entitled to a turnover order. *See, e.g.*, *In re Hanrahan v. Albany Cnty. Probation Dep't*, 508 N.Y.S.2d 283, 284 (3d Dep't 1986) (denying a 5225(b) petition where the judgment debtor retained no interest in the funds being sought by the judgment creditor); *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other . . . ." (internal quotation marks omitted)).

Judgment Creditor raises questions related to the validity of these loans and setoffs, including whether the loans were fully repaid (Palladio Reply 10-11), whether the loans at issue were between Bijan Nassi and Judgment Debtor personally (*id.* 11-12), and whether the alleged setoffs were made after Bijan Nassi and Judgment Debtor were under restraint (*id.* 12-14), but these questions raise issues of fact that are not appropriate for summary determination.[5] Were this a proceeding in which the burden were on Bijan Nassi to prove the existence and validity of these loans, the outcome might be different, but "a motion made pursuant to CPLR § 5225 is in the nature of summary judgment," *Aluminum Company of America v. Moskovitz*, No. 88 Civ. 2616 (RJW), 1991 WL 177246, at *2 (S.D.N.Y. Sept. 5, 1991), and the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also* 3A West's McKinney's Forms Civil Practice Law and Rules § 8:353 ("The petitioner (the judgment creditor) has the burden of showing either: (A) The judgment debtor is entitled to the possession of money or other personal property in the possession or custody of the respondent; or (B) The judgment creditor's rights to the money or other personal property are superior to the rights of the transferee.").[6] So long as the non-

---

[5] On August 8, 2013, Bijan Nassi brought an action against Judgment Debtor to recover on the alleged loans in New York State Supreme Court before the Honorable Charles E. Ramos. (*Nassi v. Nassi*, Index No. 157262/2013). Bijan Nassi sought entry of a default judgment against Judgment Debtor (*id.*, Docket No. 5), at which point Justice Ramos granted leave to Judgment Creditor — who contended that the lawsuit was collusive and fictitious — to intervene as an amicus party (*id.*, Docket Nos. 23, 43). At an inquest held to test the validity of Bijan Nassi's claims, Justice Ramos expressed considerable doubt as to the validity of the claims, observing that "[t]he proofs that have been elicited so far indicate that none of these loans were made by the father, individually," that "it appears that all of the loans were made to the son's business entities," and that the Court had "yet to find . . . one promise even by Craig to repay the loans." (13 Mc. 234, Docket No. 113, Ex A, at 54:23-55:5)

[6] Contrary to Judgment Creditor's argument, *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 758 (Bankr. S.D.N.Y. 2009) does not support the proposition that Bijan Nassi "bear[s] the burden of demonstrating the existence of these supposed loans." (Bijan Nassi Turnover Reply 10). The party asserting the right to setoff in *Lehman Bros.* was a creditor moving before the

16

moving party "come[s] forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) — which Bijan Nassi has done — summary determination is not warranted.[7]

## CONCLUSION

For the foregoing reasons, Judgment Debtor's motions for summary relief are GRANTED in part and DENIED in part.  In particular, it is hereby ORDERED that:

(1) The existing restraints on the accounts of BCN and Caffettino at Amalgamated remain in place pending trial;

(2) **Within fourteen days of this Opinion and Order**, Judgment Debtor shall turn over the cash listed in the November statement to Judgment Creditor, in partial satisfaction of the Judgment;

(3) **Within fourteen days of this Opinion and Order**, Judgment Debtor shall turn over the art and jewelry listed in the November statement to the appropriate authorities;

(4) **Within fourteen days of this Opinion and Order**, Judgment Debtor shall provide an accounting to Judgment Creditor of the assets listed in the June Financial Statement, including the precise details of where every asset is or was located;

(5) **Within fourteen days of this Opinion and Order**, Judgment Debtor shall provide an accounting to Judgment Creditor of the differences between the June Statement

---

bankruptcy court for relief from the automatic stay, *id.* at 755; any such creditor bears the burden of making "an initial showing of cause" for relief from the stay.  *See In re Adelphia Commc'ns Corp.*, No. 02 Civ. 9770 (RCC), 2006 WL 1559437, at *3 (S.D.N.Y. June 7, 2006) (internal quotation marks omitted).  Here, by contrast, the initial burden is on Judgment Creditor, and Bijan Nassi must only demonstrate a "genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7]     The Court rejects Judgment Creditor's argument that Bijan Nassi's declaration and supporting exhibits are too conclusory to be relied upon at this stage.  (*See* Bijan Nassi Turnover Reply Mem. 2 n. 4).  Putting aside the question of veracity, the declaration is not in the nature of a "conclusory allegation or denial."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  Instead, it details — with dates, amounts, and terms — a series of transactions between Bijan Nassi and Judgment Debtor.   (Bijan Nassi Decl. ¶¶ 12, 16; Bijan Nassi Decl., Ex. 1 ¶¶ 33-56).  Nor is the declaration inadmissible hearsay, as Bijan Nassi was an alleged party to the loans.   Judgment Creditor claims that certain documents upon which Bijan Nassi relies are inadmissible (Bijan Nassi Turnover Reply Mem. 2 n.4), but fails to specify the documents or develop any real argument as to why they are inadmissible.  *See, e.g.*, *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (declining to consider an argument that is "conclusorily asserted only in a footnote").

17

and the November Statement, including the proceeds, terms, and counterparties to any dispositions of the assets listed in the June Statement;

(6) The following interests are charged with payment of the unsatisfied amount of the Judgment:

   i. a 6.75% interest in 242 Fifth;

   ii. a 9% interest in 242 Centre;

   iii. a 12% interest in West 176;

   iv. a 1.27% interest in 315 PAS;

(7) **Within fourteen days of this Opinion and Order**, Bijan Nassi and 224 Centre shall turn over to Judgment Creditor the $480,521 that remained in Judgment Debtor's capital account with 224 Centre as of December 31, 2012 in partial satisfaction of the Judgment; and

(8) **Within fourteen days of this Opinion and Order**, Bijan Nassi and 315 PAS shall turn over Judgment Debtor's share of the proceeds — $29,648.86 — from the sale of the office building on Park Avenue South to Judgment Creditor in partial satisfaction of the Judgment.

The remaining issues — including (1) whether the Judgment should be enforced against BCN and Caffettino; (2) whether Judgment Creditor is entitled to a turnover order with respect to the Paintings; (3) whether Judgment Creditor is entitled to charging orders against the Bijan Nassi Entities beyond those listed above; (4) whether Judgment Creditor is entitled to additional proceeds and residual assets from 315 PAS; and (5) whether Judgment Creditor is entitled to proceeds from the asset dispositions of 242 Fifth and West 176 — will be determined at trial.

**Within two days of this Opinion and Order**, Judgment Creditor shall submit a proposed order consistent with the foregoing rulings.[8] **Judgment Debtor is warned that failure to comply with the terms of this Opinion and Order, or the Court's order memorializing its rulings, may result in sanctions or being held in contempt of Court.**

---

[8] In this proposed order, Judgment Creditor shall indicate the law enforcement officials to whom it believes the art and jewelry listed in the November Statement should be turned over.

Finally, **within fourteen days of this Opinion and Order**, the parties shall submit letters to the Court indicating their views on (1) whether the remaining issues should be heard in a single trial or in separate proceedings; (2) whether the remaining issues are triable of right by jury; and (3) assuming the issues are triable of right by jury, whether the parties demand a jury trial.  Judgment Creditor, Judgment Debtor, and Bijan Nassi shall all appear at a pretrial conference at **10:00 am** on **March 5, 2014**, in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York.

The Clerk of Court shall mail a copy of this Order to Judgment Debtor and terminate Docket Nos. 65 and 80.  In addition, as the case is presently closed, the Clerk of Court shall reopen the case.  Finally, Judgment Creditor shall serve a copy of this Order on Amalgamated, and shall also promptly email a copy of this Order to Judgment Debtor at c@bcnre.com.

SO ORDERED.

Dated: February 14, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge